JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CF MEDICAL, LLC, | CASE NO. SACV 10-1637-JST (FFMx) |
| Plaintiff, | **ORDER REMANDING CASE TO ORANGE COUNTY SUPERIOR COURT** |
| vs. | |
| ST. ALEXIUS HOSPITAL CORPORATION, FOREST PARK HOSPITAL CORPORATION, | |
| Defendants. | |

1

## I. INTRODUCTION

Sun Capital Healthcare, Inc. ("Sun Capital"), a Florida corporation, seeks leave to file a counterclaim in intervention against Plaintiff CF Medical, LLC, a Nevada limited liability company with citizenship in Nevada, Florida, Texas, Georgia, and Wisconsin. (Sun Cap. Mot., Doc. 25, at 1-2; *see* Doc. 13 at 2.) Sun Capital's Motion presents the question of whether Sun Capital qualifies under Federal Rule of Civil Procedure 24 for intervention, but necessarily raises the jurisdictional question of whether Sun Capital is an "indispensable" party under Rule 19. At the hearing on Sun Capital's Motion, the Court ordered the parties to submit further briefing on whether Sun Capital is an indispensable party (Doc. 32), which the parties did. (Docs. 33, 34.) Having considered all the briefs, heard oral argument, and taken the matter under submission, the Court concludes that Sun Capital is an indispensable party, thereby destroying diversity jurisdiction under 28 U.S.C. section 1332. Accordingly, the Court REMANDS the case to Orange County Superior Court for further proceedings.

## II. BACKGROUND

The case involves a dispute over certain accounts receivable ("Accounts") of Defendants St. Alexius Hospital Corporation and Forest Park Hospital Corporation, both Missouri corporations. On September 6, 2006, Equicare Capital, LLC ("Equicare"), a business that collects and purchases accounts receivable in the medical field, entered into a Collection Services Agreement ("CSA") with Doctors Community Healthcare Corporation, now known as Envision Hospital Corporation ("Envision") and several of its wholly owned subsidiaries. (Compl. ¶ 8.) Pursuant to the CSA, Equicare paid a $1.5 million recovery advance to Envision for the right to collect on a portfolio of medical accounts. (*Id.*) Envision and its subsidiaries allegedly breached the CSA by failing to provide to Equicare "certain necessary information to collect on the accounts and by failing to remit direct payments to Equicare." (*Id.* ¶ 10.) As a result, Equicare filed a

demand for arbitration and a complaint in Orange County Superior Court, separate from this action, to compel Envision to participate in arbitration. (*Id.* ¶ 11.)

On March 6, 2008, Sun Capital, the would-be intervenor here, entered into separate Master Purchase and Sale Agreements ("MPSAs") with each Defendant under which Sun Capital allegedly purchased certain third-party payable accounts receivable owed to Defendants, allegedly making Sun Capital a "secured creditor" to each of the Defendants. (Sun Cap. Mot. at 1; *id.* Exhs. 1, 3.) On March 5, 2008, Sun Capital filed Uniform Commercial Code ("UCC") Financing Statements with the Missouri Secretary of State naming Defendants as "debtors" and Sun Capital as "secured party" pursuant to the MPSAs. (*Id.* Exhs. 2, 4.) Sun Capital alleges that these Financing Statements "perfected" its "first priority security interest" in the Accounts. (*Id.* at 2.) Sun Capital further alleges that on March 27, 2008, each Defendant executed a Wholesale Lockbox Deposit and Blocked Account Service Agreement pursuant to which all payments on the Accounts would be directed to lockboxes and lockbox bank accounts established pursuant to the MPSAs. (*Id.*) Sun Capital asserts that it has not released its "ownership or security interests in the" Accounts "or the proceeds thereof." (*Id.*)

On June 4, 2008, Envision and its subsidiaries, including Defendants, settled with Equicare and its affiliate Equicare Portfolio I, LLC ("EPI"), and entered into a Settlement and Release Agreement ("Settlement Agreement"), a Purchase and Sale Agreement ("PSA"), and a Stipulated Judgment in the amount of $2.1 million. (*Id.*; *see id.* Exh. 1. "PSA"). Under the PSA, Defendants allegedly agreed to convey all right, title, and interest in the Accounts to EPI. (*Id.* ¶ 12; *see* PSA § 2.1.) The PSA listed Sun Capital as "Sellers' senior creditor" or "Senior Lender." (PSA §§ 8.1.1, 8.1.8.) The PSA also required Sun Capital's consent, stating that "[t]he transaction and all transfers of any files as part of the Agreement are subject to the consent of [Sun Capital]." (*Id.* § 8.1.8; *see id.* at 37.) Sun Capital alleges it never provided consent to the PSA. (Sun. Cap. Mot. at 4.)

Plaintiff alleges that Envision breached the Settlement Agreement by failing to make certain payments, which caused Equicare to default under certain lending agreements

3

it had with Consumer Solutions NPL-NF, LLC ("Consumer Solutions"). As a result, on August 6, 2008, Consumer Solutions and EPI entered into a Strict Foreclosure Agreement ("Foreclosure Agreement"), under which substantially all of Equicare and EPI's assets were transferred to Consumer Solutions, including EPI's rights under the Settlement Agreement, Stipulated Judgment, and PSA. (Compl. ¶ 13.) The "Transfer of Collateral" section of the Foreclosure Agreement explicitly includes EPI's "rights" under the Settlement Agreement and Stipulated Judgment, but does not specifically list rights under the PSA. (Compl., Exh. 2 ¶ 4(e)-(f).) However, the section includes a catch-all provision in paragraph 4(h), stating that "any and all rights of [EPI] in and to any other claims against hospitals and others that have sold Assets to [EPI] or engaged [EPI] to collect Assets, and entitlements arising from or related to any and all such claims," which may arguably include the PSA and the Accounts. (Compl., Exh. 2 ¶ 4(h).)

On December 10, 2008, Sun Capital alleges that Envision sold 100% of the stock in Defendants to Success Healthcare 2, LLC, a purported "affiliate" of Sun Capital. (Sun Cap. Mot. at 4.) Sun Capital does not provide any additional information on that point.

On May 7, 2009, Plaintiff and Consumer Solutions entered into a Receivables Sales and Purchase Agreement ("Receivables Purchase Agreement"). (Compl. ¶ 14.) Under the Receivables Purchase Agreement, Plaintiff purchased all of Consumer Solutions' rights in the Settlement Agreement, the PSA, and the Stipulated Judgment, which included proceeds from the Accounts. (*Id.* ¶ 15; *see id.* Exh. 3.)

On September 21, 2010, Plaintiff filed suit in Orange County Superior Court against Defendants St. Alexius Hospital Corporation and Forest Park Hospital for breach of contract, fraud, conversion, and accounting for allegedly failing to pay over proceeds from the Accounts. Plaintiff alleges that Defendants began reporting direct payments they received on the Accounts, but failed to transfer those payments to Plaintiff. (*Id.* ¶ 16.) Plaintiff has produced numerous invoices that it sent to Defendants for direct payments on the Accounts. (*See id.* ¶¶ 18-21; *id.* Exhs. 4-7.) Plaintiff also alleges that Defendants breached the PSA by failing to report additional direct payments they received. (*Id.* ¶ 22.)

On October 25, 2010, Defendants removed the case to federal district court based on diversity jurisdiction pursuant to 28 U.S.C. section 1332.

On February 17, 2011, Sun Capital filed a Motion for Leave to File a Counterclaim in Intervention against Plaintiff. (Doc. 25.) Sun Capital alleges that its interest in the Accounts may be impaired or impeded by this action and that such interest is not adequately represented by Defendants. (Sun Cap. Mot. at 4.) Sun Capital alleges that it is entitled to "any and all payments on the Accounts" and seeks to assert counterclaims for declaratory relief, conversion, fraudulent transfer, and recovery of owned and secured personal property against Plaintiff. (*See* Proposed Counterclaim at 3; *see id. generally*.)

On March 21, 2011, the Court held a hearing on Sun Capital's Motion for Leave to File a Counterclaim in Intervention, and ordered further briefing on the issue of whether Sun Capital is an indispensable party in this matter. (Doc. 32.) On April 4, 2011, Sun Capital submitted a supplemental brief. (Doc. 33.) The following week, CF Medical submitted a supplemental brief. (Doc. 34.)

### III. DISCUSSION

#### A. Diversity Jurisdiction

Defendants removed this cased based on diversity jurisdiction. Sun Capital asks the Court to exercise supplemental jurisdiction over it and its counterclaims. Because Plaintiff and Sun Capital are Florida citizens, Sun Capital's presence in this case could potentially destroy diversity and strip this court of jurisdiction unless the Court can exercise supplemental jurisdiction.

"Ordinarily, when removal is proper at the outset, federal jurisdiction is not defeated by later changes or developments in the suit." *Takeda v. Northwest Nat. Life Ins. Co.*, 765 F.2d 815, 819 (9th Cir. 1985). "But we have recognized an exception to this rule when an indispensable party would destroy diversity." *Id.* In addition, under 28 U.S.C. section 1367(b), "in any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental

jurisdiction under subsection (a) over claims . . . by persons . . . seeking to intervene as *plaintiffs* under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332." 28 U.S.C. § 1367(b) (emphasis added). The Ninth Circuit has held that "[n]either section 1332 nor 1367 upset the long-established judge-made rule that the presence of a nondiverse and *not indispensable* defendant intervenor does not destroy complete diversity." *Mattel, Inc. v. Bryant*, 446 F.3d 1011, 1014 (9th Cir. 2006) (emphasis added); *In re Olympic Mills Corp.*, 477 F.3d 1, 12 (1st Cir. 2007) (holding that "the weight of authority holds that claims launched by necessary but dispensable, nondiverse defendant-intervenors do not defeat the original jurisdiction (diversity) that obtained at the commencement of the action") (citing cases).

Thus, two situations would strip this Court of diversity jurisdiction in this case: (1) if the Court realigned Sun Capital as a plaintiff intervenor, or (2) if the Court concludes that Sun Capital is an indispensable party. Although the Court does not realign Sun Capital as a plaintiff intervenor, it concludes that Sun Capital is an indispensable party and that the Court therefore lacks jurisdiction over this matter.

**B. Sun Capital Is Not a Plaintiff Intervenor**

Notwithstanding whether a party is named defendant or plaintiff, when a party "possesses and pursues its own interests respecting the primary issue in a lawsuit," the Court "must nevertheless realign" that party for jurisdictional purposes based on such interests. *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 873 (9th Cir. 2000) ("The issue of alignment for purposes of diversity jurisdiction requires a court to 'look beyond the pleadings' to the actual interests of the parties respecting the subject matter of the lawsuit." (citing *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941))); *City and County of San Francisco v. ExxonMobil Oil Corp.*, No. 08-03490, 2009 WL 1189594, at *4 (N.D. Cal. May 4, 2009) ("An applicant's asserted intervening position is not dispositive. . . ."). This requires the Court to make "factual

6

determinations," and the Court "must align for jurisdictional purposes those parties whose interests coincide respecting the 'primary matter in dispute.'" *Prudential*, 204 F.3d at 872-73 (citing *Continental Airlines, Inc. v. Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 (9th Cir. 1987)).

Plaintiff argues that, despite Sun Capital's position that it is a counterclaimant intervenor, Sun Capital in reality is a plaintiff intervenor. Thus, the Court must determine what Sun Capital's interests are in the "primary matter" of this case. The primary matter in dispute is the Accounts; more specifically, who owns them and to whom their proceeds are owed. Sun Capital is neither a named plaintiff nor defendant, but seeks leave to intervene as a "counterclaimant" to obtain both (1) a declaration stating that its ownership rights and security interests in the Accounts claimed by Plaintiff are senior to any interests claimed by Plaintiff and (2) the value of the Accounts. (*See generally* Proposed Counterclaim.) A "counterclaimant" is merely one who asserts a counterclaim, and a counterclaim, by definition, is "a claim for relief asserted against an opposing party after an original claim has been made; esp., a defendant's claim in opposition to or as a setoff against the plaintiff's claim." Black's Law Dictionary (9th ed. 2009).

Although it is clear that Sun Capital opposes Plaintiff, whether Sun Capital should be aligned as an intervening defendant poses a separate question, one on which the parties have proffered internally conflicting positions. Sun Capital represents that because it "seeks leave to intervene in order to protect its interests in the rights to payment from certain accounts receivable of the two defendant hospital corporations and it is those accounts receivable that CF Medical is trying to get in the action[,] [a]ny review of Sun Capital's alignment patently reflects that Sun Capital is aligned with the defendants and adverse to CF Medical . . . ." (Sun Cap. Reply at 3-4.) At the same time, however, Sun Capital argues that neither Defendant can adequately protect Sun Capital's interests in this matter, but offers no basis for this contention other than the fact that neither Defendant can assert its fraudulent transfer claim. (Sun Cap. Mot. at 8.) The two positions are not

7

mutually exclusive, but the Court recognizes with skepticism the inconsistency between them.

Equally as contradictory, however, is Plaintiff's position. On the one hand, Plaintiff argues that Sun Capital is an intervening plaintiff, not a defendant, and that "its proposed claims would destroy diversity." (*See* Pl.'s Opp'n at 5-8.) On the other hand, Plaintiff argues that Defendants would adequately represent Sun Capital's interest in this case because "Sun Capital and Defendants have the same ultimate objective: [b]oth wish to prove that CFM has no rights to the Accounts." (Pl.'s Opp'n at 14). Plaintiff supports this position by acknowledging that the same counsel represents Sun Capital and Defendants, and that Sun Capital's alleged "affiliate," Success Healthcare, owns 100 percent Defendants' stock. (*Id.*)

In light of this unhelpful and contradictory guidance, the Court is left with the record. Based on Sun Capital's proposed counterclaims against Plaintiff, its affiliate's alleged ownership and/or security interest in Defendants, its sharing of counsel in this case with Defendants, and its position that it is an intervening Defendant, the Court finds that Sun Capital's interests coincide with Defendants and, if anything, it is an intervening defendant, not plaintiff. Thus, the Court does not realign Sun Capital as an intervening plaintiff. Having made that determination, the Court must next decide whether Sun Capital is an indispensable party.

**C. Sun Capital is an Indispensable Party**

"A party is indispensable if in 'equity and good conscience,' the court should not allow the action to proceed in its absence." *Dawavendewa v. Salt River Project Agr. Imp. and Power Dist.*, 276 F.3d 1150, 1161 (9th Cir. 2002); *see Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 119 (1968) ("[A] court does not know whether a particular person is 'indispensable' until it has examined the situation to determine whether it can proceed without him."). "To find that a person who is not joined is 'indispensable,' the absent person must first be deemed *necessary* as a 'person to be joined if feasible'

under Rule 19(a)(1) and (2)." *Schnabel v. Lui*, 302 F.3d 1023, 1029 (9th Cir. 2002). In 2007, "necessary" under Rule 19(a) was replaced by "required." Likewise, the word "indispensable" was deleted from the text of the Rule. These changes, however, were "stylistic, not substantive, so [they have] no effect on the analysis." *Walter v. Drayson*, 538 F.3d 1244, 1249 n.2 (9th Cir. 2008); *see Republic of the Philippines v. Pimentel*, 553 U.S. 851, 855 (2008) (explaining that "the substance and operation of [Rule 19] pre- and post-2007 are unchanged").

Under Rule 19(a), a party is "required" if "(A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person' s absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

If the court finds that the party is required, it then considers four primary factors under Rule 19(b) to determine whether the party is indispensable: (1) the prejudice to any party or to the absent party; (2) whether relief can be shaped to lessen prejudice; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder, i.e., whether there exists an alternative forum. Fed. R. Civ. P. 19(b). "There is no prescribed formula for determining in every case whether a person is an indispensable party." *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118 n.14 (1968). On the contrary, "Rule 19(b) requires the district court to analyze various equitable considerations within the context of particular litigation, rather than to decide a purely legal issue." *Walsh v. Centeio*, 692 F.2d 1239, 1242 (9th Cir. 1982); *see Provident Tradesmen*, 390 U.S. at 118 ("Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation."); *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629,

635 (1st Cir. 1989) ("Rule 19(b) determinations must be based on fact-specific considerations" and are "anything but pure legal conclusions.").

In the original briefs, neither party fully addressed the question of whether Sun Capital is an indispensable party. In fact, Plaintiff did not argue the point at all. Sun Capital argues in its Motion that *Mattel* holds that a "defendant intervenor's declaration that it is not indispensable satisfies any concern that a decision in its absence would have prejudiced it." (Sun Cap. Mot. at 11); *see Mattel*, 446 F.3d at 1013. Based on this sentence in *Mattel*, Sun Capital provides a declaration from Lawrence Leder, the Chief Financial Officer of Sun Capital, stating that "Sun Capital does not believe that it is an indispensable party" to the case. (Leder Decl. ¶ 7.) However, Sun Capital's attempt to dispose of the issue through one conclusory sentence in Leder's declaration fails to recognize that, even if the cited sentence in *Mattel* is more than just dicta, prejudice to the absent party is but one equitable factor the Court considers, and that the other factors under Rule 19(b) all strongly support the conclusion that Sun Capital is an indispensable party to this case. Thus, based on the facts of the case and Sun Capital's basis for seeking leave to intervene, i.e., that it is the owner or senior creditor of the Accounts, (*see* Sun Cap. Reply at 7 ("Sun Capital is the senior secured creditor or owner of the Accounts",) the Court ordered further briefing on whether Sun Capital is indispensable.

In its supplemental brief, Sun Capital does not dispute that it allegedly owns some of the subject Accounts,[1] but contends that its "significantly larger role with respect to the Accounts is as secured creditor." (Sun Cap. Supp. Br., Doc. 33, at 4.) As advanced in its Motion, Sun Capital therefore claims an interest in the Accounts as both an owner and secured creditor. Sun Capital further argues that it is not a required party because

---

[1] "Sun Capital is reviewing the over 37,000 Accounts in question in order to determine the extent to which it is the secured creditor or the owner of each of the Accounts . . . ." (Sun Cap. Supp. Br. at 4.)

10

complete relief is possible without its presence in the case. (*Id.* at 4-5.) Sun Capital summarizes this position as such:

> Without Sun Capital, either Plaintiff or Defendants will be determined to be the rightful owner of the Accounts, giving the prevailing party complete relief against its opponent. If Plaintiff prevails, Sun Capital could file a separate action against CF Medical to enforce its right to the Accounts, either as owner or as secured creditor; there would be no collateral estoppel effect against Sun Capital. If Defendants prevail, no additional litigation by Sun Capital would be needed because Defendants do not dispute Sun Capital's rights in the Accounts.

(*Id.*) Sun Capital's contention that complete relief is possible in its absence, however, directly contradicts its reiterated basis for intervening, i.e., that it is the owner, secured creditor, or both, of the Accounts and that the current Defendants cannot adequately protect such interests against Plaintiff's suit. Because Sun Capital alleges ownership and a secured interest in the Accounts, without its presence in the suit the Court cannot determine whether Plaintiff or Defendants are the "rightful owners" of the Accounts, which is the underlying question in dispute. Indeed, if Plaintiff were able to obtain "complete relief" from Defendants, as Sun Capital contends, then Sun Capital effectively concedes that it has no significant ownership or security interest in the Accounts, as Plaintiff's entire complaint rests on its position that it is the rightful owner of the Accounts' proceeds. For example, Plaintiff's conversion claim asserts "[Plaintiff's] clear right to possession of the direct payments received by Defendants from the Accounts . . . ." (Compl. ¶ 38.) Likewise, Plaintiff's accounting and account stated claims seek nothing more than "payment from Defendants to [Plaintiff] of the amount due from Defendants as a result of the direct payments they received and interest on that amount" from the Accounts and "reports as to the payments [Defendants] received directly on the [Accounts] . . . ." (Compl. ¶¶ 44-45.) Thus, based on Plaintiff's sought relief and Sun Capital's basis for intervening, the Court cannot accord complete relief to the existing parties without Sun

Capital's presence, making it a required party. Fed. R. Civ. P. 19(a)(1)(A).

Moreover, Sun Capital qualifies as a required party under 19(a)(1)(B) because it claims an interest in the subject of the action and, according to its own position, disposition of the matter in its absence would impair or impede its ability to protect that interest. Rule 19(a)(1)(B)(i); (*See* Sun Cap. Mot. at 8 ("Sun Capital's ownership rights and security interests in the Accounts and proceeds of the Accounts may be impaired or impeded if [Plaintiff] is allowed to pursue its claims against the very Accounts and proceeds in which Sun Capital holds its ownership rights and security interests.").) Regardless of the fact that Sun Capital now claims that its interest will not be impaired if this action continued in its absence, it is nonetheless a required party under Rule 19(a)(1)(B)(ii) because Plaintiff and Defendants run the risk of prevailing in this matter only to find that they cannot collect on their judgment because Sun Capital is the true owner of the Accounts. *See* Fed. R. Civ. P. 19(a)(1)(B)(ii) (holding that a party is required when "disposing of the action in the [party's] absence may leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest"). Potential prejudice for Plaintiff and Defendants also exists because the prevailing party could face subsequent litigation from Sun Capital over the ownership of the Accounts. Contrary to Sun Capital's position, judicial efficiency disfavors subsequent litigation over the same matter. *Takeda*, 765 F.2d at 820 n.5 (9th Cir. 1985) ("[J]udicial efficiency would not be promoted by permitting this case to go forward in federal court, with the possibility that future litigation between plaintiffs and [intervenor] or between [intervenor] and [defendant] may be required to settle this controversy fully."). Thus, under either Rule 19(a)(1)(A) or (B), Sun Capital is a required party to this action.

Sun Capital argues that, even if it is a required party, based on the four additional factors to be considered under Rule 19(b), it is not indispensable because: (1) complete relief can be obtained and therefore the existing parties will not be prejudiced if Sun Capital is not included in the action; (2) allowing Sun Capital to intervene constitutes relief that can be shaped to lessen prejudice; (3) judgment in favor Defendants represents an

12

adequate remedy for all parties that the Court can issue without Sun Capital's presence; and (4) there exists an alternative forum in state court where all parties, including Sun Capital, could litigate the matter. (Sun Cap. Supp. Br. at 5-7.) None of these arguments favor Sun Capital's position.

Addressing Sun Capital's first and third arguments concurrently, as explained above, complete relief cannot be obtained by the existing parties in this matter and, likewise, Plaintiff and/or Defendants may be prejudiced if Sun Capital is not joined. Sun Capital's second argument is not only self-admittedly circular,[2] but it misreads the very purpose of Rule 19(b). The Court's determination under Rule 19(b), entitled "when joinder is not feasible," of whether a party is indispensable starts from the premise that such party "cannot be joined." Fed. R. Civ. P. 19(b). If the Court could simply join the indispensable party, then the necessity of analysis under Rule 19(b), and thus the rule itself, would cease to exist. In addition, when determining whether a party is indispensable, the Ninth Circuit has clearly stated that "the question of [an absent party's] indispensability determines his ability to intervene" and "his ability to intervene does not determine whether he is indispensable." *Takeda*, 765 F.2d at 820 n. 5. Finally, when an alternative forum exists, as one does here in state court, it "weighs strongly in favor of remanding th[e] case." *Id.* at 821 ("In state court, all the parties who should be joined, can be joined. And, unlike a case brought under the federal court's original jurisdiction, the state court is the forum originally chosen by the plaintiffs.").

Based on the foregoing factors, the Court concludes that Sun Capital is an indispensable party to this action. Because Sun Capital's presence in this action would destroy diversity jurisdiction and an alternative forum exists in state court, the Court remands the case for further proceedings.

---

[2] In making the argument, Sun Capital notes that "the discussion of potential intervention creates a somewhat circular analysis since it is upon Sun Capital's intervention request that the indispensability question has arisen." (Sun. Cap. Supp. Br. at 6.)

## IV. CONCLUSION

The Court concludes it lacks jurisdiction over this matter because Sun Capital is an indispensable, non-diverse party that destroys diversity jurisdiction. Accordingly, the Court REMANDS the case to Orange County Superior Court, case no. 30-2010-00410257-CU-BT-CJC.

DATED: May 20, 2011                    _____

JOSEPHINE STATON TUCKER
UNITED STATES DISTRICT JUDGE